UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:07CV257-J

TINA SOHM, o/b/o
JACKIE SOHM, deceased                                                       PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                             DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Tina Sohm ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g) denying her deceased husband's claim to disability insurance benefits and supplemental security income payments.[1] After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

## PROCEDURAL HISTORY

In August and September of 2004, Claimant filed application for disability insurance benefits and supplemental security income payments, alleging that he became disabled as of February 3, 2002.[2] After a hearing, Administrative Law Judge Scott T. Miller ("ALJ") determined that Mr.

---

[1] Mr. Sohm died in April of 2007.

[2] A prior application resulted in a decision of "not disabled." As that decision was final and has not been reopened, the issue here is whether Mr. Sohm became disabled between July 19, 2004, and September 8, 2006, the date of the most recent ALJ decision.

1

Sohm's depression, carpal tunnel syndrome, diabetes mellitus, obstructive sleep apnea, degenerative joint disease and chronic pain, and coronary artery disease, status-post coronary artery bypass grafting were severe impairments that prevented him from returning to any of his past relevant work. The ALJ further found that he retained the residual functional capacity for the full range of sedentary unskilled work. This became the final decision of the Defendant when the Appeals Council denied review on March 20, 2007.

## STANDARD OF REVIEW

The disability determination process consists of five steps. <u>Wyatt v. Secretary</u>, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

1. The claimant must not be engaged in substantial gainful activity.

2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. <u>Lankford v. Sullivan</u>, 942 F.2d 301 (6th Cir. 1991).

4. The claimant must be unable to do his or her past relevant work.

5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. <u>Born v. Secretary</u>, 923 F.2d 1168 (6th Cir. 1990).

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. N.L.R.B. v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way," and this Court is not permitted to reverse a decision merely because substantial evidence would have supported the contrary decision. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

## ARGUMENTS ON THIS APPEAL

Plaintiff argues that substantial evidence failed to support the ALJ's failure to include depression as a limiting factor in hypothetical questions posed to the vocational expert. She points to the Global Assessment of Functioning (GAF) ratings of 50-55 assigned by treating mental health professionals. According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate for "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

3

Even leaving aside for a moment the principle that disability is a legal decision, not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for determining ability to engage in substantial gainful employment. One reason is that "occupational functioning" is but one of three fields considering in assessing the GAF. Another problem with using it as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area. Finally, it must be noted that a particular GAF range is considered appropriate for several alternative reasons; some of the factors that might result in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfered with the ability to work (for example, conflicts with co-workers).

The United States Court of Appeals has rejected suggestions that an ALJ commits error by declining to view a GAF score as establishing disability. Pointing out that it had "affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower," the Sixth Circuit recently cautioned that the GAF may have little or no bearing on the claimant's social and occupational functioning. <u>DeBoard v. Commissioner</u>, 211 Fed.Appx. 411, 415 (2006).

Consequently, while the GAF may represent a single piece of information to be considered in a disability inquiry, it cannot substitute for specific information about particular capabilities and characteristics. To the extent that plaintiff is arguing that the ALJ committed reversible error by failing to explicitly address the GAF scores, the contention must be rejected.

It would be more troubling if the hypothetical questions presented to the Vocational Expert

had completely omitted reference to the mental limitations noted in the record, i.e., moderate limitation in abilities to maintain concentration, persistence and pace, maintain social functioning, maintain attention and concentration for extended periods, perform activities on schedule, maintain regular attendance and punctuality, interact appropriately with the public, and respond appropriately to changes in the work setting. However, examination suggests that the limitations were not omitted altogether from the VE questioning. Instead of enumerating particular ways in which limitations might affect Mr. Sohm, the ALJ simply assumed the inability to perform in certain ways, giving the plaintiff the benefit of any doubt. Thus, the ALJ asked the VE to assume that Mr. Sohm could do only "simple, repetitive work." Tr. 334. The VE identified work that would be available within those limitations. Thus, the salient question is whether there is substantial evidence to support the ALJ's conclusion that Mr. Sohm could do simple repetitive work. Examination of the record shows such evidence. For example, Dr. Lenhoff's psychological evaluation identified some moderate impairments, but explicitly opined that "He appears capable of attending to simple, repetitive tasks." Tr. 189-190.

Claimant also contends that the ALJ erred in failing to include in the VE questioning any explicit reference to limitations imposed by carpal tunnel syndrome ("CPS"). What must be presented to the VE is not the existence of particular impairments, but simply the limitations imposed by plaintiff's impairments. In this case, the ALJ left it to the claimant to describe his limitations, and Mr. Sohm did not describe CPS limitations that the VE found relevant. In one of the hypothetical questions Such limitations would be included in the hypothetical that assumed claimant's testimony was "fully credible, that the impairments are supported by substantial medical evidence and that the claimant *has all the limitations described in his testimony*." Tr. 333 [emphasis

added]. While the VE identified ways in which the limitations described would prevent plaintiff's performing the enumerated jobs, the VE did not identify the CPS symptoms as interfering with performance of those jobs.

      An order and judgment in conformity has this day entered.